City of St. Cloud et al. v. Carlson et al.—Syllabus.

---

CITY OF ST. CLOUD AND LEVI SHAMBOW, D. H. GILL, F. B. KENNEY, N. H. WASHBURN, W. G. KING, Z. T. McCLAY, AS OFFICERS OF SAID CITY, *Appellants*, v. C. E. CARLSON, G. W. HASTINGS AND L. E. FIRKINS, *Appellees*.

Opinion Filed July 14, 1919.

1. The City of St. Cloud is authorized by its Charter (Chapter 7237 Special Acts of 1915) to pave its streets and to pay the cost (a) by the issue and sale of bonds; (b) by general taxation, or (c) by assessing two-thirds of the cost against the abutting property.

2. Having provided sufficient funds by the issue and sale of bonds to pay for all the paving designated, the city of St. Cloud had no power after such paving had been completed and paid for, to assess the property abutting the streets paved for two-thirds of the cost of the paving.

3. Special assessments can only be levied to pay for an improvement, local in character, as distinguished from general, and the proceeds of such assessments cannot be used to augment the general revenue fund, nor to finance a separate and distinct improvement project, nor to create a sinking fund for the payments of bonds issued for various municipal purposes.

4.  Power to make special assessments is given municipalities as a means of paying for a particular improvement or benefit to the property assessed, and when the necessary funds are raised otherwise and the improvements made and paid for, there remains no need for a special assessment and no power to make one.

An Appeal from the Circuit Court for Osceola County; Jas. W. Perkins, Judge.

Decree affirmed.

*W. B. Crawford* and *J. T. G. Crawford,* for Appellants;

*Johnston & Garrett,* for Appellees.

REAVES, Circuit Judge.—The appellees, hereinafter called complainants, filed their bill in the Circuit Court of Osceola County against the City of St. Cloud and certain of its officers, seeking to enjoin the collection of a paving assessment levied by the city and to have the asserted lien thereof cancelled as a cloud on the title of the property owned by them abutting the streets paved. Defendants filed a general demurrer and a special demurrer directed to certain portions of the bill and a motion to strike the same paragraphs attacked by this special demurrer, all of which were overruled and temporary injunction granted. Defendant then answered the bill, and also agreed with counsel for complainants upon a statement of facts which was reduced to writing and filed. Upon final hearing the Chancellor decreed this assessment to be void, cancelled the record thereof, and permanently enjoined the enforcement of said assessment. From this decree defendants appealed assigning as errors, the final decree and all intelocutory orders.

From the pleadings and agreed facts it appears that St. Cloud, a municipal corporation, on July 10th, 1916, passed an ordinance providing for the issue and sale of muncipal bonds in the aggregate sum of $112,000.00 for various municipal purposes, among them: "$15,000 for the grading, paving, draining and curbing of the following streets," naming them and designating the width and limits of the paving on each street. The usual steps followed, including the calling and holding of an election, the canvass of the returns, etc., culminating in the sale of the bonds on November 28th, 1916. On December 11th, 1916, contract was let to pave said streets and the paving was completed and accepted by the city authorities on October 12, 1917. On October 18th, 1917, the engineer's final estimate showing the work done and the amount paid and amount due the contractor was submitted to and accepted by the council. From this estimate it appears that the total cost of the street work was about two thousand dollars in excess of the amount of the bond issue for said purpose, but the cost was increased by paving one street at request of the abutting owners wider than originally contemplated. It seems, however, that the paving was fully paid for by the city, and, the bonds having sold at a premium, the proceeds were substantially enough if not quite enough to pay said cost in full.

The bonds were made payable serially in numerical order, the first two maturing January 1st, 1922, and five bonds maturing on the first day of each January thereafter.

On October 23, 1917, an ordinance was passed purporting to assess the property abutting said paved streets for two-thirds of the cost of the paving and declaring the

assessments to be due November 15th, 1917, and providing that the assessments might be paid on said date, or one-third on said date and one-third May 15th, 1918, and one-third November 15th, 1918. The validity of this assessment is assailed by complainants.

St. Cloud is incorporated by Chapter 7237, Special Acts of 1915. Sections 16, 17 and 18 authorize the city to issue and sell bonds for various purposes, including that of "opening and widening and paving the streets and sidewalks of said city," and the last clause of Section 18 says: "The city council shall assess and collect such taxes from the citizens, and upon the property within the city, according to the tax laws in force as shall be necessary for the payment of interest upon said bonds as well as their final payment, and it might be well to say just here that the ordinance prescribing the form of the bonds passed January 30th, 1917, contained a provision in line with this charter requirement for the payment of interest and the creation of a sinking fund.

Section 15 of the Charter provides, among other things, that: "The council shall have authority * * * to regulate and provide for the construction and paving of streets, and making two-thirds of the cost thereof a lien upon the land abutting or fronting the streets so constructed or paved, the same to be apportioned to the lands on each side of such street."

Section 22 authorizes the mayor and council "by ordinance to regulate, provide for and require the opening, widening, extension and improvement of streets * * * and may by ordinance provide for the payment of the cost thereof by general taxation or by special assessment of the cost thereof against the property fronting or abutting upon the street * * * or part of cost

thereof may be, by ordinance, paid by the general taxation of all of the property of the city and the remainder by such special assessment; "then following certain provisions relating to the form of the ordinance, the estimated cost, notice to property owners and right to be heard, it further says: "The mayor and city council are hereby authorized to provide by ordinance, for the issuance of special assessment city certificates * * * to enable the city to pay the cost of such work pending the collection of the special assessment and taxes to provide for the payment thereof with interest."

The material inquiry seems to be whether the special assessment in question was valid or invalid and upon the answer to this inquiry depends the propriety or impropriety of the decree and orders complained of. The city of St. Cloud is authorized by its Charter to pave its streets and to pay the cost (a) by the issue and sale of bonds, (b) by general taxation, or (c) by assessing two-thirds of the cost against the abutting property, and the Charter contemplates that the means of payment shall be provided for by ordinance before the improvement shall be made and if special assessments are required the property owner has the right to be heard. It is necessary that property owners be advised of the means of payment intended in order that they may have opportunity to protect their interest. Otherwise they could not act intelligently.

In this case the city council provided sufficient funds by the issue and sale of bonds to pay for all the street improvements designated in the ordinance. The taxpayers voted for said bonds and the improvement was made as contemplated, and not until after the completion of the improvement did the council take any official steps to

assess the abutting property. This inquiry then arises: Why a special assessment when sufficient funds had been provided otherwise to pay the entire cost? And what use could be legally made of the proceeds of such special assessments after the cost of the improvement had been fully paid? Special assessments can only be levied to pay for an improvement local in character, as distinguished from general (McQuillan's Mun. Corp. Sec. 2027) and the proceeds thereof can not be used to augment the general revenue fund nor to finance a separate and distinct improvement project, nor to create a sinking fund for the payement of bonds.

In either case the fund would be diverted from the particular local purpose for which, and for which only, its assessment and collection is authorized. We do not mean that the identity of particular dollars has such charm that in the progress of this work, the city could not have made a partial payment to the contractor out of funds in hand and replaced the same by the proceeds of the special assessments when made available, if it had properly provided for payment of a portion of the improvement by special assessment. In fact in such event the Charter makes special provision for the "issuance of special assessment city certificates" if need be to finance the work during its progress and pending the collection of the special asessments, but the council with the three possible methods of payment above numerated before it, chose that of issuing bonds—made no provision whatever for special assessment, and having thereby provided ample funds to complete the project outlined, it can not now raise funds by special assessment against the property benefitted to be used for other purposes. Power to make special assessments is given as a means of paying

for the particular improvement which benefits the property assessed, and when the necessary means are raised otherwise and the improvement made and paid for, there remains no need for the special assessment and no power to make it.

We might mention also that the bonds issued for the various purposes are not identified, but they are in denominations of $1000.00 uniformly designated "Municipal Bonds, Issue of 1916," hence there is no possible way of applying this fund to the retirement of the bonds out of the proceeds of which the paving was paid. Moreover the time of payment of the attempted assessment bears no relation whatever to the maturity of the bonds; also the charter specifically provides that a general property tax shall be collected to pay bonds, both interest and principal. See last clause Sec. 18.

The decree should be affirmed.

PER CURIAM.—The record in this cause having been considered by this court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the court as its opinion, it is considered, ordered and adjudged by the court that the decree herein be and the same is hereby affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.