HOBSON, Justice.
In 1946, the City of Winter Park was faced with the necessity of expanding its sanitary sewer facilities. Accordingly, it caused a comprehensive plan to be drafted for a complete sewer system. Special legislation was passed in 1947 and 1951, Chapter 24992, Special Acts of 1947; Chapter 27986, Special Acts of 1951, whereunder the city was authorized to make and finance sewer- extensions and improvements. Pursuant to Chapter 24992, Special Acts" of 1947, the city made two issues of revenue bonds for this project. Both issues were validated, and one reached this court in State v. City of Winter Park, 160 Fla. 330, 34 So.2d 740, where we held, inter alia, that the obligations to be issued were not offensive to Article IX, Section 6 of the Florida ■ Constitution, F.S.A., for failure to require a vote of the freeholders.
The second issue of revenue bonds (which was placed in pari passu with the first issue, of $500,000) was in the amount of $200,000. These bonds were to finance extensions “consisting of, but not limited to” certain collection mains. Soon after the $200,000 issue was validated, the city., passed a resolution designating Virginia I-Ieights No. 1 Sanitary Sewer District and establishing special assessments to be levied against benefited property located therein.
Appellants are freeholders whose properties within the Virginia Heights District have thus been assessed and who challenged the validity of the assessments in the Circuit Court. After trial, final judg *141 ment was entered for the defendant City of Winter Park, and this appeal is prosecuted therefrom.
In order to contribute to the understanding of issues attempted .to be raised by appellants herein, it may be helpful to. specify some issues which are not involved. Appellants do not contend that the assessments are excessive in -amount, or that the. assessments are not commensurate with benefits to their properties, or that they fall unequally upon properties within the sewer system. The first contention of appellants is that the city was without authority to levy the assessments to “repay” itself for the improvements, after such improvements had already been completely paid for with revenues resulting from the sale of sewer revenue bonds. City of St. Cloud v. Carlson, 78 Fla. 131, 82 So. 616. As will be noted at once, this argument necessarily assumes that the same areas and improvements are contemplated' by both the bond and the -assessment resolutions, as in the St. Cloud case. The trial judge found, however, that this had not been proved, and upon this point the opinion he prepared reads as follows:
“As heretofore mentioned - the Defendant has a sanitary sewer system planned for the entire corporate' area and Virginia Heights No. 1 District is but a part of the entire system. While the bill claims that' the area covered by resolutions 405 [$200,000 bond issue] and 408 [special assessments] is the same, yet the record does not so show. While No. 408 definitely defines the location of Virginia Heights No. 1 District, the only -area I have been' able to ascertain as embraced in 405 is ‘collection mains located on Lakeview Drive, Sterling Drive, Highland Avenue and French Avenue, also a lift station.’ It is evident from an examination of the map of the pump station areas showing the extent of Virginia Heights No. 1 District that it is far more extensive than the improvements provided for in No. 405. True these improvements were in Virginia Heights No. 1 District, 'but there is no showing that they were .the only improvements placed there in the construction and extension of the sewer system in that District and that other improvements and extensions were not necessary for the payment of cost of .which the Defendant has levied these special assessments requiring the property owners to bear their share of the burden.”.
These findings by the trial judge have not been shown to be in error, and a careful review of the record leaves us with no con-elusion different from the one he reached, Nor has the city -attempted to “repay” itself from special assessment proceeds for the cost of. any improvements. The city has in effect placed these proceeds in gremio legis by a resolution providing for their deposit in a special fund pending determination of the legality of the assessments, and, if they are determined to be valid, they “shall be deposited in the Sewer Construction Account and shall be used solely for the repair, maintenance, and further construction of the sanitary sewer system “of the City of Winter Park.”
A further point which must be made regarding appellants’ first contention is that insofar as it assumes that construction of improvements within the Virginia Heights District was completed and paid for before the assessments were levied, as in the St. Cloud case, this is not the fact. The record shows that the assessment resolution was adopted on May 19, 1952-, whereas the contract for the improvements was not even entered until July 30, 1952, and.it was not until May 10, 1953, that the City Commission approved final payment to the contractor for this part of the sewer project. It might also be observed parenthetically that the complaint herein was not filed until July 17, 1953, or after construction was completed and over one year after the challenged assessments were imposed.
Although it appears that what we have said, coupled with the findings of the Circuit Judge upon a vital issue in the case, disposes of appellants’ argument upon this point, we shall at this juncture examine the *142 St. Cloud case and the succeeding cases of City of Miami Beach v. Tenney, 150 Fla. 241, 7 So.2d 136, and Follansbee v. City of Ft. Lauderdale, 156 Fla. 368, 22 So.2d 815, also relied upon by appellants. In both.the St. Cloud and Miami Beach cases, the general credit of the municipality had been pledged, after a vote of the freeholders, for the issuance of bonds to finance a specific and distinct municipal improvement. After the improvement had been constructed and paid for out of bond proceeds, special assessments were attempted to be levied against benefited property to pay for the identical improvement. We held that the attempted assessments were void because no lawful use could be made of their proceeds, under the statutory authority which there existed. This rule has never been applied to a situation which commenced with the issuance of special rather than general obligations, but we do not now decide its applicability to such a situation because of the infirmities in the instant case which we have pointed out above.
In Follansbee v. City of Ft. Lauderdale, supra, 22 So.2d 815, the collection of special assessments levied to pay water revenue certificates for the enlargement of a sewer system was sought to be enjoined on substantially the same basis urged here. We held that the St. Cloud principle did not apply, and that the city charter authorized payment of the revenue certificates in part from special assessment proceeds, Rowe v. City of Fort Lauderdale, 142 Fla. 746, 196 So. 199. Insofar as the Follansbee case has anything to do with the subject under scrutiny, it is adverse to appellants’ contention. And the instant case has an additional weakening factor in that here the trial court properly found that no connection between the bond issues and the special assessments had been established.
This brings us to an examination of the basic authority of the city to make the assessments complained of. Under the 1951 Special Act, cited above, there can be no doubt that such authority existed. Appellants contend, however, that only the 1947 Special Act is applicable, because it was declared to be the authority under which the bonds were issued. But as we have stated, there is no connection between the bonds and the assessments. And if, as contended, we could look only to the 1947 Act, we are of the opinion that it contains authority for these assessments. Section 9 of the 1947 Act provides that the city may levy special assessments against benefited property, that it may pledge the amounts so collected to the payment of revenue bonds issued under the Act, and that all collections of special assessments “pledged as provided herein” shall be paid into the sewer revenue fund and treated as sewer revenue. The city has not proceeded beyond the first step authorized by this Act, and the permissive language “may pledge” clearly indicates to us that it was not required to, but was authorized to use the assessment proceeds for a portion of the sewer cost, as it proposes to do.
Appellants’ second and final main contention is that the special assessments are void for failure of the city to require a vote of the freeholders. The source of this contention is appellants’ position that the 1947 Act “allows bonds or a special assessment if approved by a majority of the freeholders in an election * * * ” (italics in appellants’ brief). As we have indicated, the 1947 Act was not the exclusive source of the city’s authority to levy the assessments. But if it had been, this contention could not be sustained. The portion of Section 9 of the 1947 Act which authorizes the city to pledge assessment proceeds to the payment of bonds contains a proviso that no bondholder shall have a right to foreclose an assessment lien unless the issuance of the bonds has been approved by freeholder vote. That the contention of appellants upon this point is without merit is abundantly clear from what we have said above.
It appears from this record that the improvements so far constructed within the Virginia Heights District are part of an overall, integrated plan to sewer the entire city area, determined to be necessary upon recommendation of responsible public health authorities. It is contended by the *143 city that the installations necessary to service Virginia Heights itself are not yet completed. Special assessments levied in connection with such a plan -cannot successfully be challenged on the meager showing which has been made in this case. As a general rule, such assessments are clothed with a presumption of validity, Rosche v. City of Hollywood, Fla., 55 So.2d 909, and in the case before us the burden which such presumption implies has not been sustained. It follows that the final judgment appealed from must be, and it is hereby,
Affirmed.
DREW, C. J., and TERRELL, THOMAS, SEBRING, ROBERTS and THOR-NAL, JX, concur.