OWEN, Judge.
In these consolidated cases the appellants sought relief against special assessments levied against their property by the appellee municipal corporation for benefits con *486 ferred upon the property by the installation of a storm sewer system and the installation of a sanitary sewer system. The suit attacking the storm sewer assessment was filed in 1960 and the suit attacking the sanitary sewer system was filed in 1961. Twice before appellants have successfully appealed from trial court rulings, once from a final decree dismissing the amended complaints with prejudice, Carson v. City of Fort Lauderdale, Fla.App.1963, 1SS So.2d 620 and Carson v. City of Fort Lauderdale, Fla.App.1963, 155 So.2d 624, and once from an order sustaining the defendant’s general objections to certain requests for admissions and interrogatories, Carson v. City of Fort Lauderdale, Fla. App.1965, 173 So.2d 743. In due course the two cases came on for final hearing on the merits resulting in a final judgment in each case which was adverse to appellants. The appeals from those final judgments have been consolidated here, number 70-230 relating to storm sewers and number 70-231 relating to sanitary sewers. Upon consideration of the record, briefs and oral argument of counsel, we conclude that the judgments should be affirmed. Though of no consolation to appellants, we think the commendable perseverance of appellants’ counsel and his untiring devotion to his clients’ cause is worthy of special recognition.
In both of these cases the principal issues are the same. First, whether a plan for financing sewer improvements through the proceeds of a public utility tax levied under F.S. section 167.431, F.S.A. (which plan the city adopted and put into effect in 1947 pursuant to Resolution No. 3064) became by virtue of an approving vote of the qualified electors of the defendant city a binding contract between the City of Fort Lauderdale and its citizens. If so, whether such contract subsequently was impaired unconstitutionally when the defendant city failed to use the public utility tax proceeds to construct the improvements for which appellants’ properties were being assessed. Appellants rely entirely upon the case of City of Fort Lauderdale v. Kraft, 1945, 155 Fla. 738, 21 So.2d 461, while appellee relies primarily (if not solely) upon Schmel-ler v. City of Fort Lauderdale, Fla.1948, 38 So.2d 36, as being wholly dispositive of the issue.
In the Kraft case, supra, the city had constructed in 1936 a sewer system paid for by the proceeds from sewer revenue bonds which were not a general obligation of the city. Three years later, under authority of a special legislative act of 1939, the city sought to levy a special assessment against such properties as had been specially benefited by the sewer system, including the property of Miss Kraft. She refused to pay the assessment and successfully brought a suit to have cancelled the unpaid assessments against her property. The Supreme Court approved the Chancellor’s judgment as a holding that the first plan for financing the sewer improvement had become a contract between the municipality and the taxpayers when approved by the latter and that the special act of 1939 was void as an impairment of such contract.
In the Schmeller case, supra, the City of Fort Lauderdale had sought to validate an issue of municipal recreational revenue bonds, in which suit Mr. Schmeller intervened. The principal and interest on the bonds were payable from revenue derived from the operation of the proposed recreational facilities and also by a pledge of the proceeds of the public utility taxes which had been imposed following referendum approval of Resolution No. 3064. On appeal from the judgment validating the revenue bonds the issue was raised as to whether the city was authorized to pledge the public utilities tax as additional security to service the recreational revenue bonds. It was contended that the pledge of such utility tax for this purpose was ultra-vires because in violation of a prior contract between the voters and the city, namely, the referendum-approved Resolution No. 3064, by which the city was authorized to levy the utility tax for sewer construction and street improvement. The *487 court held that there was no basis for the contention that the resolution pledging the utilities tax was ultra-vires.
Unfortunately, neither Kraft nor Schmeller is clearly dispositive of the precise issue involved in the instant case. Both are distinguishable but we do find comfort in one aspect of the Schmeller decision which we feel is important to our decision here.
The approval of the electors of the city was not a prerequisite to the validity of the ordinance levying the 10% public utility tax, F.S. section 167.431(1), F.S.A., and hence was advisory only. Furthermore, the “Public Improvement Fund” which the ordinance established, while specified to be used as a revolving fund from which to pay costs of installing sanitary sewers and storm sewers and for repairs, extension and improvements to public streets, referred to such improvements generally, as opposed to a specific identifiable project for storm or sanitary sewers or for street improvements. On the other hand, the Kraft case involved a specific sum of money for a specifically designated project and involved bonds which had been approved at a freeholders’ election and validated by Circuit Court action. Furthermore, in the Kraft case the special assessments were sought to be levied after the work was completed and fully paid for through another means, somewhat similar to the situation in the case of City of Miami Beach v. Tenney, 1942, 150 Fla. 241, 7 So.2d 136, and the case of City of St. Cloud v. Carlson, 1919, 78 Fla. 131, 82 So. 616.
The Schmeller case did not squarely hold that the 1947 referendum approval of the public utility tax did not create a contract between the defendant city and its electors, but it did squarely hold that the proceeds of the public utilities tax could be used for a purpose other than, one which was specified in the proposal submitted to the electors of the city. The holding as thus viewed, coupled with the fact that the public utility tax is authorized by F.S. section 167.431(1), F.S.A. without any limitation being placed on the municipal purposes for which the proceeds may be used, and without any legal requirement that the tax be approved by referendum as a prerequisite to its being levied, leads us to conclude that the utility tax which the defendant city levied in 1947 pursuant to the referendum-approved resolution was properly a part of the city’s general funds. As such, the city was not mandatorily required to limit its use of such funds to the types of improvements described in the resolution.
In September, 1948, the defendant city repealed the ordinance which had levied the public utility tax pursuant to the referendum-approved Resolution No. 3064 of 1947, and adopted in lieu thereof an ordinance establishing a new public utility tax, the proceeds of which could be pledged for the payment of revenue certificates or bonds issued by the city, and any part not so pledged could be expended for any municipal purpose. All parties agree that all utility tax proceeds received by the city prior to the adoption of this ordinance in September, 1948, had been expended for sanitary and storm sewer purposes and for public road purposes. Appellants contend that: (1) the several million dollars which the city has collected from the public utilities tax subsequent to September, 1948 must necessarily be spent for the same purposes only; (2) to the extent that such funds have not been spent for such purposes the excess must be accounted for and made available by the city to pay the cost of any storm and sanitary sewer systems constructed in the city; and (3) only after such excess funds have been exhausted may the city properly levy special assessments as a means of completing the cost of any such improvement. We hold that under the facts of this case the referendum-approved utility tax initially levied in 1947 did not create a binding contract between the defendant city and the plaintiffs (or any class to which they may belong as taxpayers, electors, or residents *488 of the city) which would require the defendant city to restrict the use of utility tax proceeds collected subsequent to September, 1948, to the uses contended for by appellants, or which would prohibit the employment of another plan for financing the sewer improvements.
In the case involving the assessment for sanitary sewers, appellants also contend that the assessments were invalid because they were not uniform. The assessments for sanitary sewers were imposed on all property in the sanitary sewer district on a square-foot basis, irrespective of whether the property was improved by single family dwelling, duplex, apartments or commercial enterprises, and even though it was admitted that the amount of sewage generated by a commercial establishment such as a restaurant far exceeds the amount of sewage generated by a one-family dwelling occupying an identical area of land. However, appellants made no showing that apportionment on a square-foot basis was improper or that the assessments exceeded the benefits to the property, and on the authority of Meyer v. City of Oakland Park, Fla.1969, 219 So.2d 417 and City of Hallandale v. Meekins, Fla.App. 1970, 237 So.2d 318, appellants must fail on this point.
In the case involving the storm sewers, appellants contend that the assessments are invalid because appellants were not benefited by the storm sewer installation. The only evidence offered by appellants on this was to establish that within the storm sewer district (which was comprised of a number of city blocks) the difference in elevation between the highest and lowest areas was some 8 feet, and that all of appellants’ properties enjoyed the benefit of the higher ground. The fact that surface water would naturally flow away from appellants’ properties does not require a finding as a matter of law that the property with the higher surface or superior heritage would receive no benefit from being within a storm sewer drainage district. The record contains other evidence from which the trier of fact could determine that the installation of the storm sewers has benefited all property within the sewer district, indirectly, if not in fact directly, and hence appellants must fail on this point as well.
The judgment in each of these cases is severally affirmed.
REED, J., and MANN, ROBERT T., Associate Judge, concur.